IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| JAMES B. NICHOLSON, SUCCESSOR TRUSTEE, | ) ) ) | CV. NO. 05-00030 DAE-KSC |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| BOBBY N. HARMON, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT BOBBY N. HARMON'S: (1) MOTION TO
ABATE THE ORDER GRANTING PLAINTIFF'S MOTION FOR CONTEMPT
AGAINST DEFENDANT BOBBY N. HARMON OF FINAL JUDGMENT
FILED AUGUST 22, 2006; (2) MOTION FOR ORDER THAT THE ORIGINAL
SETTLEMENT AGREEMENT AND THE ARBITRATION AWARD AGAINST
BOBBY N. HARMON FILED AUGUST 18, 2006 BE DECLARED VOID; AND
(3) MOTION FOR DAMAGES.

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendant Bobby N. Harmon's

motion and the supporting and opposing memoranda, the Court DENIES

Defendant Bobby N. Harmon's: (1) Motion To Abate Order Granting Plaintiff's

Motion For Contempt Against Defendant Bobby N. Harmon Of Final Judgment

Filed August 22, 2006; (2) Motion For Order That The Original Settlement

Agreement And The Arbitration Award Against Bobby N. Harmon Filed August 18, 2006 Be Declared Void; and (3) Motion For Damages.

<u>BACKGROUND</u>

The background of this litigation is set forth in the Court's Order Granting Plaintiff's Motion for Contempt Against Defendant Bobby N. Harmon of Final Judgment Filed August 22, 2006, and Court's Order Granting Plaintiff's Motion for Entry of Judgment on the Arbitration Award Against Bobby N. Harmon filed August 18, 2006 ("Contempt Order"), and will not be reiterated here. Suffice it to say that the parties have engaged in protracted litigation regarding Harmon's posting of Protected Subject Material ("PSM") on his website.

In the most recent developments in this saga, the Court found Harmon in Contempt of its Final Judgment and Entry of Judgment on the Arbitration Award ("Entry of Judgment") for failing to remove PSM from his website and instead placing the offensive material in password-protected web pages. (Contempt Order at 10-12.)  The Court ordered Harmon to provide Plaintiff with access to all password-protected areas on Harmon's website such that Plaintiff would be able to enter the website and remove any PSM within ten days of the entry of the Contempt Order.  Harmon was warned that if he did not provide such access, the Court would issue an order to Yahoo! Small Business Hosting to shut

2

down Harmon's website and prohibit him from creating another website unless he could certify to the Court that the website did not contain any PSM.  Harmon was further warned that if he did not comply with the Contempt Order, the Court would enter an order prohibiting Harmon from creating a website with <u>any</u> webhost until he could certify to the Court that the new website did not contain PSM.

On February 8, 2007, Harmon filed the instant motions, the first of which is essentially a motion for the Court to reconsider its previous orders in this case and award damages to Harmon, and therefore will be treated as a Motion for Reconsideration.  Plaintiff filed his Opposition on February 16, 2007.

<u>STANDARD OF REVIEW</u>

A "motion for reconsideration must accomplish two goals.  First, a motion for reconsideration must demonstrate reasons why the court should reconsider its prior decision.  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  <u>Donaldson v. Liberty Mut. Ins. Co.</u>, 947 F. Supp. 429, 430 (D. Haw. 1996).

Courts have established only three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or

fact in order to prevent manifest injustice.  See Mustafa v. Clark County School District, 157 F.3d 1169, 1178-79 (9th Cir. 1998); Great Hawaiian Financial Corp. v. Aiu, 116 F.R.D. 612, 616 (D. Haw. 1987), rev'd on other grounds, 863 F.2d 617 (9th Cir. 1988).  The District of Hawai`i has implemented these standards in Local Rule 60.1.

Mere disagreement with a previous order is an insufficient basis for reconsideration and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. Hawai`i Stevedores, Inc. v. HT & T Co., 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005).  "Whether or not to grant reconsideration is committed to the sound discretion of the court."  Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir. 2000)).

DISCUSSION

In his motion, Harmon raises five arguments, which will be addressed in turn.

A.  The Contempt Order Contains Blatantly False Statements

Under this heading, Harmon objects specifically to the portions of the Contempt Order stating that the Court had no record of an Answer that Harmon

4

had purportedly filed on December 2, 2006 ("December 2nd Answer") and that the link Harmon had provided to his website, where he had posted the December 2nd Answer was inoperable.  Harmon's argument seems to be that these alleged errors are of such importance to the ultimate disposition of the Contempt Order that they warrant reconsideration.  Specifically, Harmon points the Court to evidence that the December 2nd Answer was sent to Ms. Theresa Lam, courtroom manager, via U.S. Mail and electronic mail, a return receipt addressed to Plaintiff's attorney at his place of business, and numerous individuals who received courtesy copies of Harmon's email to Ms. Lam.  Harmon also avers that according to records kept by Yahoo! Small Business Hosting, the December 2nd Answer was posted on his website and last modified on December 13, 2006.  These arguments do not change the fact that the December 2nd Answer was never properly filed with the Court, thus, Harmon has not provided strongly convincing evidence that the Court committed manifest errors of fact justifying reconsideration of the Contempt Order.

Federal Rule of Civil Procedure Rule 5(e) defines "filing with the court" as follows:  The filing of papers with the court as required by these rules shall be made by filing them with the <u>clerk of the court</u> . . . .  A court may by local rule permit papers to be filed, signed, or verified by electronic means."

5

Local Rule 7.7 provides that all documents shall be filed with the clerk.  Local Rule 77.2 provides the address for the Court Clerk's Office, which is: 300 Ala Moana Blvd. Room C-338, Honolulu, Hawai`i, 96850.  LR 77.2 (2002). Harmon was well aware of the proper procedures for filing considering that he has properly filed papers on at least a dozen occasions in this particular case alone.

Harmon identifies Ms. Lam as the "Court Clerk," whereby he apparently believes that sending papers to her constitutes proper filing.  This belief is mistaken.  Ms. Lam is not the Court Clerk, she is this Court's Courtroom Manager.  Sending papers to Ms. Lam, or anyone other than the Court Clerk at the above mentioned address, <u>does not</u> constitute filing.  If papers are not properly filed, this Court will not consider them.

The Court acknowledges that the link provided by Harmon is operable at this point in time, but that will not allow Harmon to prevail on this argument. The Court checked the provided link prior to issuing its Contempt Order to satisfy its own curiosity about a document that seemed to be missing from the record. Even if the link had worked properly on the day the Court attempted to access it, the December 2nd Answer would not have been deemed filed and properly before the Court.  Therefore, whether the Court erroneously stated that the link was inoperable is irrelevant to the continuing validity of the Contempt Order.

6

Based on the foregoing, the Court sees no need to reconsider its

Contempt Order.

B.  Plaintiff Did Not Make a Reasonable Attempt to Obtain the December
    2nd Answer

In his second argument, Harmon contends that the Plaintiff did not

make a reasonable effort to obtain the December 2nd Answer.  Harmon's reading

of the Contempt Order on this point is confused and the Court will attempt to

clarify the Contempt Order, in the belief that mere clarification will dispose of any

argument.

Harmon starts out, "Referring to my Answer which Plaintiff states

was filed on 'January 17, 2007,' he states: 'In this document, Harmon claims that

he filed an Answer to the instant motion on or around December 2, 2006.  The

Court has no record of Harmon's December 2, 2006 Answer."  (Def.'s Mot. for

Recons. at 5 (quoting Order at 7).)  The first clarification necessary is that the

quoted language is not the language of Plaintiff, but rather the language of the

Court.  Harmon did, in fact, file an answer to a supplemental filing by Plaintiff on

January 17, 2007.  It is that filing that the Court referred to as the "Answer."  In

that filing, Harmon stated that he had filed an answer to the Motion for Contempt

on December 2, 2006.  The Court was stating that it had no record of that answer, as discussed above.

No part of the Contempt Order was based on a claim by Plaintiff that Plaintiff failed to receive a copy of the December 2nd Answer.  Thus, Harmon's misplaced argument offers no ground on which the Court should reconsider the Contempt Order.

C.  <u>The Court Erred by Failing to Set a Hearing for the December 2nd Answer</u>

Harmon's third argument is that the Court committed a procedural error by failing to set a hearing date for the Motions for Abatement and Damages that accompanied the December 2nd Answer.  Harmon alleges that this supposed error gave Plaintiff an advantage.  This argument is unconvincing for two reasons.

First, Harmon fails to specify what injury he suffered or what advantage Plaintiff gained as a result of this supposed error.  Thus, the Court has no information on which to base "a 'definite and firm conviction that a mistake has been committed.'"  <u>Conant v. McCoffey</u>, No. C97-0139 FMS, 1998 WL 164946, at *2 (N.D. Cal. 1998) (citing <u>Sana for Sana v. Hawaiian Cruises, Ltd.</u>, 961 F. Supp. 236, 238 (D. Haw. 1997), <u>rev'd on other grounds</u>, 181 F.3d 1041 (9th Cir. 1999).

Second, and more importantly, the Court has determined that the December 2nd Answer was not properly filed, therefore, the Court was under no duty to set a hearing date for it.  See, supra, subsection A.

D.  The Court Does Not Answer What Constitutes PSM

Harmon continues to insist that he cannot understand the definition of PSM.  The Court believes this argument to be disingenuous.  Harmon is a literate, prolific, and creative man, and this Court is confident that he can understand the common meanings of words in the English language.

The Court believes that the real thrust of Harmon's argument is that he believes that the First Amendment to the United States Constitution provides him the right to speak on any subject, at any time, in any manner he wishes.  In this belief, Harmon is sorely mistaken.  Harmon entered into a valid Settlement Agreement, which is a contract binding on the parties to the underlying litigation. In general, parties enjoy expansive freedom of contract, Sheehan v. Altanta Int'l Ins. Co, 812 F.2d 465, 469 (9th Cir. 1987), including the freedom to contract for silence.  See, Kalinauskas v. Wong, 151 F.R.D. 363, 365 (D. Nev. 1993) ("Confidential settlements benefit society and the parties involved by resolving disputes relatively quickly, with slight judicial intervention, and presumably result in greater satisfaction to the parties.  Sound judicial policy fosters and protects this

9

form of alternative dispute resolution.")  First Amendment rights are not unlimited.

Times Film Corp. v. City of Chicago, 365 U.S. 43, 49 (1961) (noting the fallacy of

"the claim of absolute privilege against prior restraint under the First Amendment .

. . .").  Harmon voluntarily limited his First Amendment Rights when he signed the

Settlement Agreement, and he cannot now invoke the rights he contracted away to

avoid the force and effect of a voluntarily, valid agreement.

 The subject matter covered under the confidentiality provision of the

Settlement Agreement, which constitutes PSM includes the following:

- Events and circumstances surrounding or occurring during Harmon's employment at Kamehameha Schools ("KS") or in the performance of his duties at P&C Insurance Company ("P&C");

- Facts or information discovered or learned by Harmon related in any way to KS or P&C as a result of his employment at KS or the performance of his duties at P&C;

- Any of the claims, issues, and allegations and/or the basis for the claims, issues, and allegations set forth by Harmon in the underlying litigation that was terminated by the Settlement Agreement;

- Any of the claims, issues, and allegations and/or the basis for the claims, issues, and allegations which were settled and released by Harmon in the Settlement Agreement;

- Any of the claims, issues, and allegations and/or the basis for the claims issues, and allegations which relate in any way to the treatment of the settlement proceeds as wages and its tax consequences;

- Any of the claims, issues, and allegations and/or the basis for the claims, issues, and allegations which relate in any way to perceived conflicts of interests among attorneys who have entered appearances in the underlying litigation and any of the parties in the proceedings;

- Any of the claims, issues, and allegations and/or the basis for the claims, issues, and allegations which relate in any way to the Arbitration, including, but not limited to, the Arbitrator's rulings and/or awards, the basis for those rulings and/or awards, and the arguments and statements made by the parties in connection with the Arbitration;

- Any of the claims, issues, and allegations and/or the basis for the claims, issues, and allegations which relate in any way to Harmon's claims, or notices of claim, for a right to defense and indemnification from KS or its insurance carrier for any cost, expense, or damage incurred or awarded against Harmon in the Arbitration.

In general, Harmon is prohibited from disseminating information relating to or obtained during his employment at KS, the circumstances of his dispute with KS, and the results of that dispute.  The Court does not know how to make this restriction any clearer.

E.  The Order Does Not Address the December 2nd Answer

Harmon's final objection to the Contempt Order is that it does not address the arguments raised in his December 2nd Answer and January 17th Answer.[1]  As discussed above, the December 2nd Answer was never filed properly,

---

[1]  Harmon refers to the January 17 Answer as his "January 10, 2007 filing" but the Answer was not filed with the Court until January 17, 2007, hence the Court will refer to it by the date that it was actually filed, not the date that it was

thus, it was never before this Court. Therefore, the Court did not err in failing to address any arguments made therein. The Court did not err by failing to address arguments raised in the January 17th Answer for the reasons set forth below.

Harmon's first argument in the January 17th Answer is that Plaintiff's Supplemental Concise Statement of Facts and Supplemental Declaration of Steven Guttman, Esq. (collectively, "Supplementals") were untimely because they were received only one week before the hearing date, which did not leave Harmon sufficient time to file a proper answer. Harmon suffered no prejudice as a result of the allegedly untimely filing. Harmon's bald assertions to the contrary are insufficient to support his claims. See, United States v. Jose D.L., 453 F.3d 1115, 1124 (9th Cir. 2006) (court rejected government's "bald assertion" that caution required retention of defendant); United States v. Henry, 138 Fed. Appx. 28, 30 (9th Cir. 2005) (defendant's "bald assertion" that he was an overnight guest was insufficient to entitle him to an expectation of privacy); United States v. Dhingra, 371 F.3d 557, 566 (9th Cir. 2004) ("bald assertion" of prejudice from inflammatory testimony insufficient).

Not only does Harmon fail to provide the Court with anything more than bald assertions that he was injured in some undefined way by the allegedly

_____

sent to other parties.

untimely receipt of Supplementals, Harmon's own document seems to belie that argument.  The Court observes that despite his claim that he did not have time to prepare a proper answer to the Supplementals, Harmon did indeed file an Answer on January 17, 2007, which sets forth numerous arguments, and which the Court considered in making its determination on the Motion for Contempt.  Furthermore, the Court is unconvinced that Harmon was injured in some way by the Supplementals inasmuch as the Supplementals did not raise new arguments or legal theories, but merely corrected erroneous factual statements, such as the identity of Harmon's webhost.

Similarly, Harmon has not supported his "bald assertions" that the Settlement Agreement, the Arbitration Award, and the relief requested in Plaintiff's Motion for Contempt violate his First and Fourth Amendment Rights.  Because these arguments were unsupported, the Court did not err in failing to address them.

Harmon's second argument in the January 17th Answer is that Plaintiff did not adequately respond to the arguments set forth in Harmon's December 2nd Answer.  His third and fourth arguments are related: he contends that Plaintiff did not sufficiently respond to Harmon's Motion to Abate the Arbitration Award and Motion for Damages, which were included with the

13

December 2nd Answer.  These arguments fail for numerous reasons.  Most importantly, these arguments fail because the December 2nd Answer was never filed, therefore, Harmon's arguments were never properly before the Court.  In addition, Plaintiff does not have the obligation to respond directly to every point Harmon raises.  Just because Plaintiff does not respond to an argument does not mean that Harmon must prevail on that point.  For example, Harmon urged the Court to abate the Arbitration Award because Plaintiff had failed to define PSM to his satisfaction and to provide him with a list of specific webpages that contained PSM and needed to be taken down.  As has been shown, however, there was no need for Plaintiff to respond directly to this demand, inasmuch as the definition of PSM is abundantly clear.  Additionally, Harmon raises arguments that fail to state a claim for judicial relief, such as his argument that the Arbitration Award should be abated because Plaintiff did not apologize for incorrectly identifying Harmon's webhost in its original Motion for Contempt.  See Fed. R. Civ. P. 12(b)(6).  Plaintiff's failure to respond to this outlandish accusation does not change the fact that Harmon has not raised a valid claim.

For the foregoing reasons, the Motion to Abate Order Granting Plaintiff's Motion For Contempt Against Bobby N. Harmon of Final Judgement Dated January 26, 2007 is DENIED.

14

F.  Harmon's Motion To Declare the Settlement Agreement Void

Harmon moves this Court to declare the Settlement Agreement void, alleging that it was obtained through "fraud and misrepresentations, and for the illegal purpose of obstructing just in EQ2048 and other criminal and civil lawsuits in progress" when the parties entered the Settlement Agreement.  (Mot. at 10-11.) In his motion, Harmon does not provide facts or law supporting this contention. As discussed above, the Court cannot grant a motion on such bald assertions. Therefore, Harmon's Motion to Declare the Settlement Agreement Void is DENIED.

G.  Harmon's Motion for Damages

Harmon's Motion for damages urges the Court to award him

appropriate damages for time and expenses in defense of
the original underlying lawsuits the Arbitration, and the
instant case, plus General Damages and Punitive
Damages, for bringing these frivolous, fraud-ridden,
justice-obstructing lawsuits and bogus arbitration
procedures which caused great mental, physical and
financial harm to Defendant and his family, and which
clearly violate Defendant's guaranteed Constitutional
Rights to Freedoms of Speech, Privacy, and a Trial by
Jury.

Inasmuch as Harmon is not the prevailing party, he is not entitled to an award of damages, and this motion is DENIED.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant Bobby N. Harmon's: (1) Motion To Abate Order Granting Plaintiff's Motion For Contempt Against Defendant Bobby N. Harmon Of Final Judgment Filed August 22, 2006; (2) Motion For Order That The Original Settlement Agreement And The Arbitration Award Against Bobby N. Harmon Filed August 18, 2006 Be Declared Void; and (3) Motion For Damages.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, February 28, 2007.



_____
David Alan Ezra
United States District Judge

Nicholson v. Harmon, CV No. 05-00030 DAE-KSC; ORDER DENYING DEFENDANT BOBBY N. HARMON'S: (1) MOTION TO ABATE THE ORDER GRANTING PLAINTIFF'S MOTION FOR CONTEMPT AGAINST DEFENDANT BOBBY N. HARMON OF FINAL JUDGMENT FILED AUGUST 22, 2006; (2) MOTION FOR ORDER THAT THE ORIGINAL SETTLEMENT AGREEMENT AND THE ARBITRATION AWARD AGAINST BOBBY N. HARMON FILED AUGUST 18, 2006 BE DECLARED VOID; AND (3) MOTION FOR DAMAGES.